IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SCOTT ALLEN WALKER                                                    PLAINTIFF

v.                          Civil No. 5:19-cv-05189

DETECTIVE ZACHARY WARE,
Siloam Springs Police Department; and
OFFICER JAMES L. COOLEY,
Siloam Springs Police Department                                    DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Scott A. Walker ("Walker") filed this *pro se* civil rights action under 42 U.S.C. §

1983.   Walker contends his constitutional rights were violated when he was wrongfully arrested

and incarcerated on a theft of property charge.

The case is before the Court on the pending Motion for Summary Judgment (ECF No. 74)

filed by the Defendants.   Walker has responded (ECF No. 76) to the Motion and Defendants filed

a reply brief (ECF No. 82).   Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the

Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned

for the purpose of making this Report and Recommendation

### I.       PROCEDURAL HISTORY

Walker's case was initially filed on October 7, 2019 (ECF No. 1).   In the original

Complaint, Walker named as a Defendant a John Doe Detective with the Siloam Springs Police

Department.   Walker stated that he was arrested on August 6, 2019, on a warrant for felony theft

of property from the Wal-Mart store in Siloam Springs.   *Id.*   The date of the theft was April 4,

2018.   *Id.*   Detective Zachary Ware was identified and substituted for the John Doe Detective.

(ECF Nos. 8 & 9).   The Complaint was served on Detective Ware.   (ECF No. 9).   The case was

later stayed and administratively terminated pursuant to *Younger v. Harris,* 401 U.S. 37, 54 (1971), because of the pending theft of property charge.   (ECF No. 29).   The theft of property charge was eventually dismissed on November 19, 2020.   (ECF No. 44 at 5 & 34).   On January 8, 2021, Walker's Motion to Reopen was granted (ECF Nos. 41-42).

On January 13, 2021, Walker filed an Amended Complaint (ECF No. 44).   In the Amended Complaint, he named as Defendants Detective Ware and Officer James Cooley of the Siloam Springs Police Department; Jayme Weber ("Weber"), and Brooke Poole ("Poole"), both with asset protection for Wal-Mart; the Siloam Springs Police Department; and Wal-Mart, Inc. *Id.*   Walker maintains the theft was improperly investigated by Poole, Weber, Detective Ware, and Officer Cooley.   *Id.* at 7.   As a result, Walker says he was falsely arrested and remained incarcerated from August 6, 2019, to October 28, 2019, and from February 22, 2020, to November 19, 2020.   (ECF No. 44 at 11).   Walker maintains that this period of imprisonment amounted to involuntary servitude.   *Id.* at 22.

By Opinion and Order (ECF No. 46) entered on January 25, 2021, the following claims were dismissed: (1) all claims against Weber, Poole, and Wal-Mart, Inc.; (2) all claims against the Siloam Springs Police Department; (3) the defamation claim; and (4) all official capacity claims. Walker's individual capacity claims against Detective Ware and Officer Cooley are currently before the Court.

## II.   BACKGROUND

Poole was employed as an asset protection associate at the Wal-Mart Supercenter in Siloam Springs, Arkansas, at the time of the theft.   (ECF No. 74-4 at 1).[1]   Poole was contacted by

---

[1] All citations are to the CM/ECF document and page number.

Weber,[2] an asset protection associate, who formerly held Poole's job, about an open case

concerning a theft that occurred on April 3, 2018, in the Siloam Springs store.  *Id.*  Weber

indicated he had apprehended Walker for shoplifting merchandise at the Wal-Mart in Springdale,

Arkansas and identified him as the individual involved in the April 3, 2018, theft.  *Id.* at 1-2.

Officer Cooley was dispatched to the Siloam Springs Wal-Mart on June 28, 2019,

regarding the report of theft of property occurring on April 3, 2018.  (ECF No. 74-1 at 1).  Poole

provided Wal-Mart's open case reports to Officer Cooley.  *Id.* at 2.  According to Officer Cooley,

Weber had reviewed security camera footage from April 3, 2018, and identified Walker as the

person who left the store with a computer and monitor "after having presented the door associate

with a bogus receipt."  *Id.* at 2-3.  Officer Cooley states that Poole "provided photos of Mr.

Walker from his store in Siloam Springs and photos he had been forwarded by Mr. Weber taken

at the Springdale Wal-Mart."  *Id.* at 2.  Officer Cooley subsequently obtained a copy of Walker's

driver's license photograph to compare with the ones provided by Wal-Mart.  *Id.*  Officer Cooley

compared all the photographs and concluded that Walker "was the person in all of the photos."

*Id.*  Officer Cooley prepared an incident report.  (ECF No. 74-1 at 16-23).  The incident report

was supplemented by Officer Ware and Captain Derek Spicer.  *Id.* at 20-22.

Officer Cooley completed an affidavit of probable cause to obtain an arrest warrant for

Walker for theft of property.  (ECF No. 74-1 at 12).  He described in detail the report made by

Weber:

> Jayme Webber states he was made aware of a missing computer and monitor.
> Jayme Webber said he looked through footage and found a male (later identified as
> Scott Allen Walker) remove the "spider wire" security device from an "HP Omen
> 27 inch Monitor."  ($678.00).  Jayme Webber['s] statement[] then says Scott
> Walker put the monitor on the shelf and he walked in a loop before returning to the

---

[2] In Officer Cooley's affidavit of probable cause, he spells the last name as Webber.  (ECF No. 74-1 at 12).

monitor and placed the monitor in his cart.   Jayme Webber states Scott Walker
picked up a "Core i7 16 GB" ($1,259.00) computer system, put it into his cart then
walk over to the furniture section, Scott Walker proceeds to remove the "spider
wire" from the computer system.   Jayme Webber then states Scott Walker walked
to the front of the store where he is stopped by the door Walmart Door Associate.
Scott Walker presents the individual with an old receipt and then leaves the store
with the system.

*Id.* at 12-13.   Officer Cooley stated that "[o]n Tuesday, July 2nd, 2019 I spoke with Scott Walker

who initially said "he did not [k]now anything about a theft from Walmart."   When I gave Scott

Walker a few more details about the case I was investigating, he stated "he did not think it was

him, but could not be sure."   *Id.* at 13.   On July 5, 2019, a Benton County Circuit Judge found

that Officer Cooley's "sworn affidavit demonstrates reasonable cause for the issuance of a warrant

of arrest" for Walker.   *Id.* at 15.

Officer Cooley later learned that Walker had been in jail in Kansas on April 4, 2018, and

could not have been involved in the computer theft.   (ECF No. 74-1 at 2).   Officer Cooley states

he recognized that the person in the photographs from the Siloam Springs Wal-Mart had shorter

hair than the other photographs; however, Officer Cooley states that due to the fact that Walker

had been committed to the Arkansas Division of Correction[3] (ADC) for periods of time he

"believed it possible that his hair had been cut shorter while incarcerated."   *Id.*

On August 6, 2019, Officer Ware was advised that the Springdale Police Department had

Walker in custody based on a theft of property warrant issued on June 28, 2019.   (ECF No. 74-2

at 1).   Officer Ware responded to Arkansas State Police Troop L Headquarters in Springdale

where he took custody of Walker.   *Id.*   He handcuffed Walker and took him to the Benton County

---

[3]  Officer Cooley has submitted a correction to his initial affidavit.   (ECF No. 82-1).   Officer Cooley indicates that
Walker had not yet been committed to the ADC when he first looked at the photographs.   *Id.* at 2.   However, Officer
Cooley indicates the criminal history return he reviewed showed Walker had been incarcerated in other facilities.   *Id.*
Officer Cooley states it was his belief that "during [Walker's] time of incarceration in detention facilities, he may have
had his hair cut shorter."   *Id.*

Detention Center ("BCDC").  *Id.*  Officer Ware assisted the prosecuting attorney in requesting

that bond be set.  *Id.*  Officer Ware had no other involvement with Walker.  *Id.*

"On August 7, 2019, while incarcerated, [Walker] was found . . . to be in possession of

approximately 4 grams of methamphetamine.  He was charged with furnishing, possession, or

using prohibited articles in a correctional facility."  (ECF No. 74-3 at 2).

On September 5, 2019, Captain Spicer "received a letter from Mr. Walker about the Wal-

Mart theft case.  Mr. Walker stated that he could not have committed the theft because, at the time

of the theft on April 4, 2018, he was either living in the Mirror Inc. Halfway House in Wichita,

Kansas or was incarcerated in the Sedgwick County Kansas Jail."[4]  (ECF No. 74-3 at 2-3).  That

same day, Captain Spicer contacted Mirror Halfway House and was told that while Walker had

lived at their facility, "there was no record of him living there on April 4, 2018."  *Id.* at 3.  Next,

Captain Spicer contacted the Sedgwick County Jail and was told Walker was incarcerated there

from April 16 to April 23, 2018, as a result of a federal hold.  *Id.*

When Walker continued to assert that he was in Kansas on the date of the theft, Captain

Spicer was directed to contact Mirror Halfway House again.  (ECF No. 74-3 at 3).  Captain

Spicer was provided with a list of dates Walker lived at the facility.  *Id.*  Walker had been a

resident there "on four separate occasions, the last being April 9, 2018, to April 16, 2018."  *Id.*;

*see also* (ECF No. 74-3 at 6).

After Walker filed this lawsuit on October 7, 2019, (in which he contends he was not in

Arkansas on the date of the theft and alleges Defendants' conduct violated the Fourth, Fifth, Sixth,

Eighth, Thirteenth, and Fourteenth Amendments of the United States Constitution), Captain Spicer

---

[4] The actual letter received can be found at (ECF No. 82-1 at 5).

again contacted the Sedgwick County Sheriff's Office and this time asked to speak with a supervisor. (ECF No. 74-3 at 3-4). Captain Spicer was told Walker was incarcerated there from April 16, 2018, until April 23, 2018. *Id.* However, the supervisor indicated that he would check the jail records and respond back. *Id.* On December 1, 2020, Captain Tannehill faxed Captain Spicer two documents reflecting the two times Walker was incarcerated there. *Id.* The documents reflect that Walker was incarcerated there from January 10, 2018, until April 9, 2018, and again from April 16, 2018, until April 23, 2018. (ECF No. 74-3 at 7-9). "The first time of incarceration included April 4, 2018, and corroborated Mr. Walker's position that he was not in Arkansas" on April 4, 2018. (ECF No. 74-3 at 4).

Subsequently, on November 19, 2020, Walker pleaded guilty to possession of a controlled substance in a correctional facility on August 7, 2019, and the theft charge was dismissed. (ECF No. 74-3 at 4); (ECF No. 74-3 at 17-19). On March 11, 2021, Circuit Judge Brad Karren sentenced Walker to three years in the ADC and a suspended sentence of seven years. (ECF No. 74-3 at 17).

On September 18, 2019, Walker "was arrested by the Springdale Police Department for fleeing in a vehicle, theft of property, criminal mischief and possession of drug paraphernalia." (ECF No. 74-3 at 4). On February 24, 2020, Walker was arrested and charged with failing to register as a sex offender. *Id.* at 4-5. On October 27, 2020, the failure to register as a sex offender charge was nolle prossed. (ECF No. 74-3 at 20).

While these charges were pending, Walker was incarcerated in the Washington County Detention Center ("WCDC") until he pleaded guilty to the charges of fleeing in a vehicle, theft by receiving, criminal mischief, possession of a controlled substance and possession of drug paraphernalia. (ECF No. 74-3 at 5); (ECF No. 74-3 at 18-25). On October 27, 2020, Walker

6

was sentenced to two years in the ADC and four years suspended sentence by Circuit Judge Mark

Lindsay.  *Id.*; *see also* (ECF No. 74-3 at 18-25). Captain Spicer maintains this information shows

"Walker was incarcerated on a variety of charges to which he ultimately pleaded guilty and would

have remained incarcerated even if the issue with the Wal-Mart theft charges had been resolved

earlier."   (ECF No. 74-3 at 5).

Walker was incarcerated in the BCDC on the following dates:

- August 6, 2019, until September 16, 2019, when he was released on a personal recognizance bond;

- November 12, 2019, until November 14, 2019, he was transported from the WCDC to the BCDC and booked in to appear in court on a failure to appear charge;

- March 12, 2020, he was transferred from the WCDC to the BCDC to appear in court on the charges of theft, furnishing prohibited articles and tampering with physical evidence.   The transfer was for one day; and

- November 17, 2020, he was transferred from the WCDC to the BCDC to appear in court on the charges of theft, furnishing prohibited articles and tampering with physical evidence.   The transfer was for one day.

(ECF No. 74-5 at 1-10).

Walker was incarcerated in the WCDC on the following dates:

- May 25, 2019, on charges of shoplifting and fleeing, released the same day;

- September 18, 2019, until December 18, 2019, on charges of fleeing, theft of property, criminal mischief, and possession of drug paraphernalia;

- February 22, 2020, to February 5, 2021, on charges of failing to register as a sex offender, criminal trespass, failure to pay fines and costs, theft of property, and traffic law violations; and

- May 28, 2021, to June 14, 2021, on a parole violation.

(ECF No. 74-6 at 1-2).

## III.    APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Com. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.    DISCUSSION

In their motion for summary judgment, Defendants contend that the chronology of other charges against Walker demonstrate he would have remained incarcerated even had the Wal-Mart theft of property charge been resolved earlier. Based on the overlapping dates of incarceration, Defendants maintain Walker's claims are barred under *Heck v. Humphrey,* 512 U.S. 477 (1994).

8

Second, Defendants maintain that Walker has alleged no viable claims under the Fifth, Sixth, or

Eighth Amendments.    Third, Defendants argue that Officer Cooley had probable cause to arrest

Walker even though it was ultimately determined that Walker did not commit the theft.

Defendants also argue that Officer Cooley conducted a proper investigation, and that Walker's

false imprisonment claim must fail because he was arrested pursuant to a valid warrant.    Finally,

Defendants argue they are entitled to qualified immunity.

### A.    Application of *Heck v. Humphrey*

In *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994), the Supreme Court held that a § 1983

constitutional challenge that necessarily implicates the validity of a state court conviction or

sentence **is not cognizable** until the conviction or sentence has been reversed, expunged, or called

into question by the issuance of a writ of habeas corpus.    Defendants maintain the time Walker

served for various other charges, to which he pled guilty, overlaps the time he spent in custody on

the Siloam Springs theft charge.    They maintain his arrests, guilty pleas, and incarceration on the

other charges in effect serves to validate the time Walker spent incarcerated.    Defendants argue

that to find in Walker's favor on the false imprisonment claim would implicitly invalidate the

guilty pleas and sentences on the other charges.    In support, Defendants cite the Court to *Young*

*v. Blytheville Police Dep't, et al.,* No. 3:17-cv-334-DPM (E.D. Ark. Nov. 9, 2018).

In *Young*, Travis Young ("Young") was arrested because he had in his possession a credit

card belonging to Nancy Shain ("Shain").    (Case No. 3:17-cv-334-DPM--ECF No. 27 at 1).

Shain had been robbed in December 2016 at a Wal-Mart in Blytheville.    *Id.*    A warrant was issued

for Young's arrest.    *Id.*    "While that warrant was still outstanding, Dennis Moore ["Moore"] was

shot and killed in Blytheville."    *Id.*    Officer Matt Huckabay, who was at the murder scene, noted

that Young lived nearby.    *Id.*    "Eyewitness Terrica Williams ["Williams"] later identified Young

in a photo lineup." *Id.* A warrant was issued for Young's arrest on a charge of capital murder. *Id.*

Williams attempted to recant her statement about Young the following day but was ignored by Officer Huckabay. *Id.* Camiya Storey ("Storey") was also arrested for Moore's murder. *Id.* "After she was pressured by Huckabay, she identified Young as the shooter. Young turned himself in that day, but claimed he was in Poplar Bluff when Moore was murdered." *Id.* He was denied bail because of the capital murder charge. *Id.* In January 2017, officers discovered Young, or at least his phone, was in Poplar Bluff on the day of the murder. *Id.* at 2. In March, Storey "told her lawyer that she had been wrong: Young was not the shooter; another man was. Young's lawyer, however, didn't know about this recantation until August, some five months later." In September, the murder charge was dropped. *Id.* "Young pleaded guilty to a reduced charge of theft by receiving, related to the Wal-Mart patron robbery, and the circuit court sentenced him to an agreed sentence of time served; about nine months." *Id.*

Young filed the civil rights action contending Officer Huckabay and other officers "violated his constitutional rights by detaining him on bogus murder charges." *Id.* The Court held that "any claim that he was detained without probable cause failed as a matter of law. Officers had probable cause to arrest Young for robbery." *Id.* The Court also held that any challenge to his imprisonment for capital murder was barred by *Heck. Id.* at 3. The Court noted that "Young's time in custody eventually became his time-served sentence for theft by receiving. Any successful challenge to his detainment would implicitly invalidate some of his agreed sentence for that charge. . . . Because Young's § 1983 claim about his detention on the murder charge necessarily attacks his confinement on his theft conviction, his claim is barred." *Id.*

In so holding, the *Young* court relied on *Newmy v. Johnson,* 758 F.3d 1008 (8th Cir. 2014).

10

In that case, Troy Newmy ("Newmy") sued Trey Johnson ("Johnson"), a parole officer in Mississippi County, Arkansas. *Id.* at 1009. "According to the complaint, Johnson falsely reported that Newmy failed to report to see him as required by the terms of Newmy's parole during five months in 2012. Newmy claimed that as a result of Johnson's allegation, his parole was revoked, and he was required to serve an additional three to five months of detention." *Id.* The district court found Newmy's claim was not cognizable under *Heck.* In footnote 10 of *Heck*, the Court "explained that the principle barring collateral attacks is not rendered inapplicable by the fact that the plaintiff is no longer incarcerated." *Id.* at 1010 (*citing Heck,* 512 U.S. at 490 n.10). The Court ruled that although Newmy was no longer incarcerated on the underlying parole revocation, "if Newmy were to prevail and recover damages, the judgment would necessarily imply the invalidity of the parole revocation and his extended incarceration." *Id.* at 1011. The Eighth Circuit recognized that "this rule could preclude a damages remedy for an inmate who is detained for only a short time with limited access to legal resources, but that is a consequence of the principle barring collateral attacks that was applied in *Heck.*" *Id.* at 1012.

The Court does not believe that *Newmy* stands for the proposition it is cited for in the *Young* case. *Newmy* did not extend *Heck* to charges other than the single parole revocation charge at issue. Moreover, we note that in *Young* the arrest and incarceration on the robbery the murder charges were simultaneous and Young's sentence of time served on the reduced charge of theft by receiving "overlap[ped] completely with the time he was detained for murder." (Case No. 3:17-cv-334-DPM--ECF No. 27 at 3). Here, the times do not completely overlap. Even if they did, this Court disagrees with the portion of the *Young* opinion purporting to extend *Heck* beyond the specific offense at issue. *Heck* whether it is termed a favorable termination rule, or a delayed accrual rule, simply means that a civil rights action cannot be brought for damages until the

criminal conviction at issue has been overturned, dismissed, or in some way called into question.

Defendants ask this Court to apply the rule of *Heck* not only to the theft charge that is at issue in this case, but to every other charge Walker was convicted of between August 6, 2019, and his sentencing on separate charges on October 27, 2020.   A finding in Walker's favor on his claim that the April 4, 2018, theft of property charge was improperly investigated and that he was unlawfully imprisoned will not invalidate his underlying conviction on charges not arising out of that theft.   Walker may pursue a claim for damages on the theft charge since it was dismissed. Of course, Walker's damages may be severely limited should he prevail on these claims since it appears he would have been incarcerated in any event.[5]   However, *Heck's* favorable termination rule is offense specific and only extends to the theft charge.   It does not extend to the other multiple charges for which probable cause might have existed or of which Walker was found guilty.

## B.   The Fifth Amendment

Walker says he is pursuing a Fifth Amendment due process violation.   However, "[t]he Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and [Walker has] not alleged that the federal government or federal action deprived [him] of property." *Barnes v. City of Omaha,* 574 F.3d 1003, 1005 n. 2 (8th Cir. 2009).   To the extent Walker is pursuing a Fifth Amendment due process claim, it fails.

## C.   The Sixth Amendment

The Sixth Amendment affords an accused the right to a speedy trial, to confront witnesses against him, to a jury trial, and to the assistance of legal counsel.   U.S. Const. amend VI.   While

---

[5] Defendants calculate that there was only a single day, August 6, 2019, when Walker's incarceration was due solely to the April 4, 2018, theft charge.   (ECF No. 83 at 3).

Walker mentions the Sixth Amendment in his complaint, he makes no allegations that these rights were violated.   The Sixth Amendment claim thus fails.

### D.   The Eighth Amendment

The Eighth Amendment provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.   U.S. Const. amend. VIII.   Other than listing the Eighth Amendment in his complaint, Walker asserts no claims under it.   The Eighth Amendment claim therefore fails.

### E.   The Thirteenth Amendment

Walker alleges his imprisonment amounted to involuntary servitude.   The Thirteenth Amendment provides:   "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."   U.S. Const. amend. XIII.   "[T]he phrase 'involuntary servitude' was intended to extend to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce undesirable results."   *United States v. Kozminski,* 487 U.S. 931, 942 (1988)(cleaned up).

In this case, Walker does not allege that he is being required to perform any work. However, even if he were required to work prior to his conviction, detainees may be required to perform general housekeeping responsibilities without violating the Thirteenth Amendment's prohibition of involuntary servitude.   *Martinez v. Turner,* 977 F.2d 421, 423 (8th Cir. 1992)(requiring pretrial detainee to perform general housekeeping duties, including those at communal areas beyond the confines of his cell does not constitute punishment or amount to involuntary servitude).   Walker's Thirteenth Amendment claim also fails.

**F.     Fourteenth Amendment--Substantive Due Process—Failure to Properly Investigate**

Walker alleges that Officer Cooley made false statements in the affidavit of probable cause resulting in his unlawful arrest.   First, Walker argues that any layman could tell that his driver's license photograph and the Springdale Wal-Mart photograph did not match the photographs of the Siloam Springs Wal-Mart theft.   (ECF No. 76 at 1).   Second, he contends Officer Cooley's statement that he recognized the person in the older photograph had shorter hair but determined Walker had been committed to the ADC and believed his hair had been cut during the incarceration is false.   *Id.*   Walker maintains he had never been in the ADC prior to February of 2021.   *Id.* at 2.   As noted above, Officer Cooley submitted a supplemental affidavit in which he notes that the statement that Walker had been incarcerated in the ADC was indeed incorrect.   However, Walker had spent time incarcerated.   Third, Walker points out the probable cause affidavit contained the wrong Social Security Number ("SSN") and indicated he lived in Siloam Springs not Springdale. *Id.*   Fourth, Walker contends Officer Cooley lied about his conversation with Walker.   *Id.* Walker specifically denies that he said he was not sure if he had committed the offense.   Instead, Walker states he told Officer Cooley that he had never been in Siloam Springs.   *Id.*   Finally, Walker maintains Poole gave Officer Cooley the picture from his arrest at the Springdale Wal-Mart in June of 2019 and just reported Walker was the subject from the theft on April 4, 2018. *Id.* at 3.   Had an adequate investigation been performed, Walker asserts Officer Cooley would have determined Walker was not in Arkansas on the date of the theft.   Walker maintains Officer

Cooley should be held liable for his actions.[6]   Walker makes no argument that Officer Ware

should be held liable under the substantive due process clause and therefore, no claim is stated

against Officer Ware.

"To establish a substantive due process violation, [Walker] must demonstrate that a

fundamental right[7] was violated and that the conduct shocks the conscience. . . . Whether the

alleged conduct shocks the conscience is a question of law."  *Akins v. Epperly,* 588 F.3d 1178,

1183 (8th Cir. 2009)(citations omitted).   "[T]he threshold question is whether the behavior of the

governmental officer is so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience."  *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8 (1998).

"Conduct intended to injure will generally rise to the conscience-shocking level, but negligent

conduct falls 'beneath the threshold of constitutional due process.' . . . Deliberate indifference or

recklessness falls somewhere between negligent and intentional actions."  *Akins,* 588 F.3d at 1083

(*quoting Lewis,* 523 U.S. at 849).   "Unlike a probable cause determination under the Fourth

Amendment, "the recklessness standard has a subjective component."  *Walz v. Randall,* 2 F.4th

1091 (8th Cir. 2021)(*quoting Amrine v. Brooks,* 522 F.3d 823, 834 (8th Cir. 2008)).

In *Akins* the Eighth Circuit stated that:

To establish a violation of due process based on a failure to investigate, [Plaintiff]
must show that [the Defendant] intentionally or recklessly failed to investigate
thereby shocking the conscience.

We have held that the following circumstances indicate reckless or
intentional failure to investigate that shocks the conscience:  (1) evidence that the
state actor attempted to coerce or threaten the defendant, (2) evidence that

---

[6] Walker also argues the City of Springdale should be held liable.   However, as noted previously, the official capacity claims were dismissed.

[7] The Eighth Circuit has "recognized that the liberty interest involved in the case of a failure to investigate is 'the interest in obtaining fair criminal proceedings before being denied one's liberty in the most traditional sense." *Akins v. Epperly,* 588 F.3d 1178, 1083 n.2 (8th Cir. 2009)(*quoting Wilson v. Lawrence Cnty.,* 260 F.3d 946, 956 n.8 (8th Cir. 2001)).

investigators purposefully ignored evidence suggesting defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence. An officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct.

*Akins,* 588 F.3d at 1183-84 (cleaned up); *see also Engessor v. Fox,* 993 F.3d 626, 630 (8th Cir. 2021)("A failure to ask the right questions and to reconcile inconsistent evidence may be shoddy policy work, but . . . it reflects nothing more than negligent or grossly negligent conduct").

In the absence of threats, coercion, or systemic pressure, the issue is whether Officer Cooley "recklessly or purposefully ignored evidence suggesting" that Walker had not committed the April 4, 2018, theft. *Engessor,* 993 F.3d at 630. Officer Cooley asserts that he "fully believed at the time that the faces in the photos were of Mr. Walker." (ECF No. 74-1 at 3). Officer Cooley agrees that the affidavit contained the wrong SSN and listed the incorrect city in which Walker lived, but Officer Cooley notes that the affidavit contained the correct date of birth and driver's license number as well as the correct street address. Further, he states the incident report had the correct SSN and listed Springdale as the city of residence. With respect to Officer Cooley's conversation with Walker, while Walker alleges he told Officer Cooley that he had not been to Siloam Springs, Walker does not allege that he told Officer Cooley he was incarcerated in Kansas on the date in question. This issue was not raised until after Walker's arrest and detention. Finally, even if Poole did give Officer Cooley the wrong photograph and falsely told him that Walker had committed the April 4, 2018, theft, there is no indication that Officer Cooley was aware of this. "[T]hese alleged faults are instances where [Officer Cooley], at most, failed to investigate other leads and to explore inconsistencies in the evidence. . . . We have held that such faults do not evidence conscience-shocking recklessness." *Walz,* 2 F.4d at 1104 (quotation marks and citations omitted). For these reasons, Officer Cooley is entitled to summary judgment on this

16

claim.

### G.  Fourth Amendment—Arrest and Detention without Probable Cause

Probable cause is required for the government to obtain a warrant to conduct a search or seizure.  *Katz v. United States,* 389 U.S. 347, 357-58 (1967).  "Probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime."  *Kuehl v. Burtis,* 173 F.3d 646, 649 (8th Cir. 1999).  If a person is arrested pursuant to a facially valid warrant, the person fails to state a violation of his Fourth Amendment rights.  *Baker v. McCollan,* 443 U.S. 137, 142-43 (1979); *see also Luckes v. County of Hennepin, Minn.,* 415 F.3d 936, 939 (8th Cir. 2005)("Because Luckes was named in a valid bench warrant, however, probable cause for his arrest pursuant to that warrant was established, and his Fourth Amendment argument is thus without merit"); *Fant v. City of Ferguson,* 107 F. Supp. 3d 1016, 1037 (E.D. Mo. 2015)("But if a person is arrested pursuant to a facially valid warrant, even if the circumstances of his detention may have been wrongful or constitute false imprisonment under a tort-law analysis, the person fails to state a violation of his Fourth Amendment rights").  "The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process*."  *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (emphasis in original) (citations omitted).

Walker maintains the arrest warrant should not have been issued since it contained multiple incorrect and/or false statements.   Walker contends this incorrect and/or false information mislead the issuing judge.   Specifically, Walker maintains the warrant affidavit had the incorrect SSN; an incorrect address; attributed a statement to him that he did not make; and falsely identified him as the man in the photographs provided by Wal-Mart.

"The Fourth Amendment . . . establishes the minimum constitutional standards and

procedures not just for arrest but also ensuing detention." *Manuel v. City of Joliet, Ill.,* ___ U.S.

___, ___, 137 S. Ct. 911, 917 (2017)(cleaned up).    The assumption is that a showing of probable

cause will be based on a truthful showing.    *Franks v. Delaware,* 438 U.S. 154, 164 (1978).

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.    But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Id.* at 165 (citations omitted).

"A warrant based upon an affidavit containing deliberate falsehood or reckless disregard

for the truth violates the Fourth Amendment and subjects the officer who submitted the affidavit

to § 1983 liability."    *Schaffer v. Beringer,* 842 F.3d 585, 593 (8th Cir. 2016)(cleaned up).

Showing deliberate or reckless falsehood is a high standard and "not lightly met, and "[m]ere

allegations of deliberate or reckless falsehoods are insufficient."    *Id.*    To succeed on his claim

Walker would need to establish that once the allegedly false information is removed, "the

affidavit's remaining content does not support a finding of probable cause."    *Stockley v. Joyce,*

963 F.3d 809, 821 (8th Cir. 2020); *see also Williams v. City of Alexander, Ark.,* 772 F.3d 1307,

1311 (8th Cir. 2014).

Walker can make no such showing.    With respect to the incorrect SSN and the listing of

the incorrect city on Walker's address, these at most were the result of negligence on the part of

Officer Cooley.    "Allegations of negligence or innocent mistake are insufficient" to invalidate the

warrant.    *Franks,* 438 U.S. at 171.    With the regards to the statement attributed to Walker and

Officer Cooley's identification of Walker based on the photographs,[8]   Walker's mere disagreement

---

[8] By affidavit, Officer Cooley states he "fully believed at the time that the faces in the photos were of Mr. Walker." (ECF No. 74-1 at 3).

with these statements does not equate to a showing that the ostensible falsehoods were made intentionally or recklessly. *Id.; Williams,* 477 F.3d at 559. Walker offers no argument or evidence to support his bare assertion that when the purported falsehoods are omitted, probable cause does not exist for his arrest on the theft charge. The probable cause affidavit described Officer Cooley's contact with Poole at the Siloam Springs Wal-Mart; it contained Walker's correct name, date of birth, and driver's license number; the date of the theft; a description of the items stolen; Officer Cooley's review of Weber's report; and Weber's identification of Walker as the individual involved in the theft of computer system. Even with the alleged falsehoods removed, the remaining content is sufficient to establish probable cause for the issuance of an arrest warrant for theft of property. *Farah v. Weyker,* 926 F.3d 492, 500 (8th Cir. 2019)(Plaintiffs need to show the "allegedly false information was what established probable cause for their arrests and detention"). As probable cause exists, Walker's arrest and detention was pursuant to lawful process, and he cannot prevail on his Fourth Amendment claims.

### H. Qualified Immunity

Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)). Having found that the alleged facts do not support a constitutional violation on any of Walker's claims, Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right

the Defendant is entitled to qualified immunity).

## V.    CONCLUSION

For these reasons, it is recommended that the Defendants' Motion for Summary Judgment (ECF No. 74) be **GRANTED,** and the case **DISMISSED WITH PREJUDICE.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 18th day of November 2021.

*/s/ Christy Comstock*

CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE